Good morning, Counsel. Good morning, Judge Reinhart. Good morning, Judge Kuczynski. Good morning, Judge Thomas. My name is Stephen Yagler, and I represent the plaintiffs in this case. This Court, as it well knows, is in the exact same position that the District Court was in and has the power to do and should do what the District Court should have done, and that is grant judgment on the issue of liability to both plaintiffs so that this case can go to trial on the Manel issue and on the damages issue. One has to ask oneself in this case whether or not this ever would have happened to a white LAPD officer. The conduct here is shocking. There obviously is no qualified immunity, and this case takes Groh v. Ramirez and Judge versus Groh, and puts a spin on it that's absolutely incredible by these police officers going out and arresting some two people, taking them to another place, two other places, another house, another police station, not showing them a warrant, saying they left the warrant at the office, and then doing the things that they did. Let me see. Wait. We have two separate issues here. One is the search, and one is the arrest. Now, on the search, I don't think in your brief you argued that the reason to invalidate the search was the failure to present the warrant. Is that right? I didn't. I'm analogizing. I'm mentioning Groh v. Ramirez because it presents a starting point at which the officers, if the people had been at home, should have showed them the warrant and let them see the way. That's just incredible. But your basis for – are we talking about the search first or the arrest? I can do it either way. Let me hit the arrest first. Okay. On the arrest, as I understand the briefs, the only argument the State makes with respect to the arrest is that the defendants that you sued are entitled to qualified immunity because they had nothing to do with the arrest. They're not arguing about whether the arrest was made for probable cause or not. They say that's irrelevant. So the only issue, as I understand the briefs, is Sheriff Baca responsible for this arrest and is Mr. Costley responsible for the arrest? Mr. Costley is responsible for the arrest, and there is no qualified immunity because he was there, because he was the supervisor, because he caused the arrest. It gets down to, again, as I read the briefs, that the defendants say Mr. Costley was – there is no evidence they say that Mr. Costley was there because what you have is a conflict between the declaration and the affidavit of the plaintiff, and that under that circumstance the State says we should disregard that, and then there's no evidence of Mr. Costley's presence. I don't think that's really what they say or really what the evidence shows. What he says is he wasn't there at the moment the arrest was initiated. He was there at the arrest. They don't say he wasn't there at the arrest. They say he wasn't there when the car was stopped. Well, they don't say he wasn't – that they proved he wasn't there. They say there's no evidence that he was there if you disregard the testimony of the – Mrs. Kendrick. Well, you can't disregard her testimony. The question is, was he there? What they say you disregard the testimony of Mrs. Kendrick is they say there's a conflict between the affidavit and the declaration, and therefore we should disregard her testimony. That's the way I understand the brief. But you can't disregard her testimony. Okay. Why? Because it was on summary judgment. Yeah. I mean, you have to give her the benefit of all inferences. She says that he was there. In one of them she said he – she was there, in the other she said she didn't know who the second-claim closed person was. If she didn't know at one point in time, that is not a contradiction. There are a number of cases from this circuit, Block v. County of Los Angeles, the Switlick – Hoover v. Switlick Parachute Company and the Radobenko case, that say you can't create an issue – that stand for the proposition that you can't create a disputed issue of fact by contradicting yourself. Saying you don't know in one place and then having a – having a recollection isn't the same as that. She clearly places him at the scene of the arrest. He never denies, in any evidence of which I know, that he wasn't at the arrest. What he says is, and if you stretch it as far as you can stretch it, is that he wasn't there at the moment the arrest was initiated. He doesn't say that he didn't have under arrest Mrs. Kendrick or Mr. Kendrick. He just doesn't say that. I don't find that anywhere in the record. If I'm wrong, then I'm wrong. What about Baca? Baca is only liable on a Minnell theory, and the weakest part of the case is against Baca, no question about that. But I think there is a case against him because he ultimately is responsible for the policies and procedures that were followed. And here the shocking – But there's nothing here about policies or procedures. I'm sorry. There's no evidence about – that there was a policy they were following. That can be inferred from the fact there wasn't any discipline. The Sheriff's Department did nothing about this. You have a patently unconstitutional arrest, a patently unconstitutional search, and nothing. You have acquiescence, and I think under the Reservist of the City of Los Angeles, acquiescence in unconstitutional conduct is sufficient for imposition of supervisorial Minnell liability. All right. Now, that takes care of the arrest, right? Yes. What about the search? There were eight factors that were cited by the defense in support of the validity of the arrest warrant, not one of them by itself. The search warrant. There's no arrest warrant. I'm sorry. I misspoke. The search warrant. There's no probable cause. There's nothing. You've got a guy who's doing 140 – Do you agree he's a reliable, confidential informant on the record? I'm not saying he was – the confidential informant. Did the affidavit establish that he was a reliable, confidential informant in the past? No. I don't believe it did, because you have the affiant saying that another officer, at some point in time under unspecified conditions, found that this was a reliable informant. Well, they said he had been reliable in a specified number of instances where he had given them information and it proved to be accurate. Conclusory. I mean, what does that mean? Anybody can say that. How can anybody ever penetrate that or test it? If that were said, they say that all the time. That's the puffing part of the affidavit. This is a reliable guy. But what? I mean, you've got to have facts. There are no facts at all. And putting aside the fact or the point of whether or not this fellow was reliable or not, let's assume for the purposes of this part of my argument that the guy was reliable. He didn't give them anything here that constituted probable cause, nothing. Well, he said that Mr. Kendrick told him they were planning on robbing a bank at a particular time and who the other participants in the robbery were going to be. Well, that flies in the face of the fact that he doesn't give any information about how that happened. He told them he was in county jail. I mean, nobody tested any of this. He could say anything he wanted to say. Moreover, other parts of the information that he gave that were sought to be tested, such as gang membership, were found to not to be not credible. Well, that's because the forums checked no for gang membership. No, the informants said the forums, the forum, there was a forum that had checked. You said it was found to be not credible that the other people were gang members. There was an assertion by the police that the alleged reliable informant attributed gang membership to the people who were going to commit the robbery. When the police sought to confirm or disprove that, they found it not to be correct that there was gang membership. Thus, the only part of the reliable informant's testimony that was tested was found to be not credible. None of the eight factors that were listed with respect to the things that the informant told them give rise to probable cause, either by themselves or cumulatively. Well, maybe that would result in suppression of anything seized. But we're talking about 1983 liability here. It's not simply that the informant was unreliable, but he was so clearly unreliable that a reasonable officer would have said you never rely on this. And if you take as undisputed, which I think is, that he in fact had provided evidence in other cases, or these officers, what's the officer's name? Crayton. That's the one. Thought had information to that effect, why isn't it reasonable for him to rely on that, even if ultimately the evidence seized is suppressed because it turns out that the informant was not, after all, reliable enough? Because permitting police to rely on this kind of unspecified, unparticularized, nebulous, conclusory information would give rise to a police state. That's why. Because police could always say that. They find some schlub who's in jail, guy who was in there for 140 days, and points the finger at a bunch of people, one of whom happens to be an LAPD detective. This would give rise to terrible, terrible consequences. Well, he didn't point his finger at an LAPD detective. The wife was an LAPD detective, right? But in essence, he was pointing the finger at the wife also because he gave, communicated the information to the sheriff's department that the wife was an LAPD officer. They knew that. That's why they had the contingent of LAPD people in tow when they went out to do what they did. I'm going to ask you one question. You say the informant was in jail at the time the affidavit was. How long had the informant been in jail before the affidavit was filed? A total of 140 days. Prior to this? I believe that to be the case, yes. There was no motion ever made, was there, for a Franks hearing or anything about omission of material from the affidavit? Or I guess you didn't because they never found anything. I don't know criminal law very well. My understanding of a Franks hearing is that that's had in criminal cases. Yeah, but there was no criminal. There was no criminal case here because there's no crime. Was that true with all the other suspects also, the three others? That's absolutely correct. Nothing happened here. Some guy in jail made up a story. We were never able to find him. His name was Washington. The sheriff's department, we were never able to penetrate where the guy was so we could take his deposition or do anything with him. He was named as a defendant in this case, as a matter of fact. Are you claiming that there is no informant? I think that's a possibility, yes. But I don't know. I can't say, you know, You can explain that to Judges Reinhardt and Thomas. He's an expert? Where if you cannot speak, you must be the maidservant. Yeah, that's 7.0 Ludwig Wittgenstein's Tractatus, which you can't talk about. You can't talk about. Very famous German. What are they conversing with Wittgenstein here? There's nothing in the record about this informant. Is there about who he was and how long he'd been in jail? There is something to the effect of 140 days. Have you taken discovery in this case to find out about the informant? As I said a moment ago, but I didn't – it got covered up by my bad German. We couldn't find the guy. The Sheriff's Department said they didn't know where he was and that nobody could find him. We were trying to serve him for months, both with a summons and complaint and then with a deposition subpoena. Can't find him. I don't know if he exists or not. Let's see if there are any questions. I'm sorry, let me just follow up on that. You were doing discovery, yes? I'm sorry. You were doing discovery? Yes. Okay. I'm just wondering, were there any documents in the police files documenting this interactions with this informant? Either those that you were given or maybe those that maybe you were denied access because of confidentiality. I'm just saying, is there a paper trail of some sort leading to this informant? My recollection is that the – what we had was what the police said of Mr. Washington, but we didn't have anything from Mr. Washington. I – you know, maybe, you know, call me naive, I assume he exists, but who knows? I mean, I haven't ever really been able to come to a conclusion on that. I mean, it seems almost like too big a lie for the police to say that he existed when he didn't exist, but there are bigger lies than that that one finds in the world. All right. Thank you, Mr. Yank. Thank you. Good morning. May it please the Court. Patrick Hurley for Defendants Michael Cossley and Sheriff Baca. Deputy Cossley did exactly what we want our law enforcement officers to do. He got information from a reliable informant about a planned bank robbery. He conducted a proactive investigation. Is it true this man had been in jail 140 days before this warrant was obtained? Well, Your Honor, there's no evidence in the record regarding the custody status of the informant. The only thing that was presented to the district court was a – what was purported to be an internal LAPD memo containing essentially a summary or a paraphrase of an officer's interview with the informant, where the informant stated that at the time that he first learned of the bank robbery, he was in custody. However, there's no evidence in the record that either Deputy Cossley knew that he was in custody or had any information about his criminal history. So was he or wasn't he? Well, again, Your Honor, there's no – we don't know. There's no evidence in the record to suggest that he was and no evidence to suggest that he was. Well, did Officer Cossley meet with him in jail? There's no evidence to suggest that, Your Honor. We know that the – Maybe we need to find out more evidence. Well, again, that – These are not answers that are particularly helpful to you. Well, Your Honor, I think that it's – again, we're here on summary judgment. It's the plaintiff's burden to conduct discovery on their case to present it in opposition to a summary judgment motion. The fact that they didn't – they couldn't find him, that they didn't present evidence relating to his custody status or his criminal history means that they couldn't oppose our summary judgment motion. But it was Officer Cossley who met with the confidential informant, right? Among others. There was also Deputy Culver who first learned of the – of the bank robbery plot and then gave that information to Deputy Cossley. And we know that the informant was actually out of custody because during the investigation before the search warrant application was made, the informant met with two of the suspects and showed deputies where they lived and did other things to assist the deputies in this investigation. Was Cossley deposed? No, Your Honor. I don't believe he was. Was Culver deposed? No. Not to my knowledge. The only – we took the plaintiff's depositions and, in fact, on the issue of the existence of Mr. Washington, I believe they both testified that they knew him because he had painted one of their cars. So this is not somebody that was – that was made up by the Sheriff's Department in this case. He – again, there was evidence that he had provided information to the deputies before that had led to arrests and convictions of suspects, which, again, bolsters his credibility and reliability in this case. But we don't know which case is, right? Exactly. We don't know which case is, but I don't think – I mean, now that he's a known person, there's no reason to withhold that information, is there? I'm sorry, Your Honor. He's no longer confidential. Everybody knows his name. That's correct. So do we know what case is? What case is he provided information on? Sure. No, you don't. I don't. Again, the question for the district court and the question for this Court is whether the affidavit that's in the record, whether a reasonable police officer could have believed that that affidavit provided probable cause for the search warrant to issue. I think that's the narrow issue that we're here on, not – No, I understand that. I just asked you whether or not we knew the cases. I guess the answer is no. No, Your Honor. I don't have any personal knowledge about those prior cases that the informant was involved in. I'm sorry. Tell me about this affidavit. The affidavit that was presented in support of the search warrant. It's included in the appellant's actual – Oh, the probable cause affidavit. Correct. Correct. Now, attached to the probable cause affidavit are these, I think – yeah, these are the – the preparation checklist with – that shows that they're not gang members? Your Honor, I'm not sure that those were actually attached to the affidavit. I think one of the appellant's arguments is that they weren't, that they were omitted. The discrepancy that they talk about is really – it appears from the search warrant checklist that there was a check done of the suspects on a California Cal Gangs database, which then their names were run. Their names didn't pop up on the database, which then led the deputy – it appears led the deputy to circle no as far as search warrants. But again, the deputies that were – Deputy Costley, when he prepared his affidavit, he was relying on the information provided by the informant, who said that he knew the suspects personally, had known them for three years, and so that was the information that they were getting. Did he then know that they had checked them on the list and that they weren't gang members? Did Deputy Costley know that when he prepared the affidavit or before he obtained the warrant? Your Honor, that's not clear. And I think it would depend on timing issues. I'm not clear as to whether or not the search warrant checklist was prepared after the affidavit was issued. I can certainly check the excerpts and give the Court an answer. Well, it says it's a search warrant preparation checklist, so it would seem that it was prepared in order to get a search warrant. And it would seem to show an inconsistency between what the informant said and what the facts were. I agree. There is a discrepancy between what's on the checklist and what's in the affidavit. Again, I'm not sure what the timing issue is. I can check on that and try to give the Court an answer. But again, even with that discrepancy, what we're talking about is the fact that the suspects' names didn't show up on a computerized database. It doesn't necessarily mean that that database is an exclusive list of all gang members in California, only that they didn't show up on this database. Again, the informant provided information that the suspects or three of the four suspects were gang members. I think that's what Deputy Costley was relying on. You argue that Costley and Baca are entitled to qualified immunity because they weren't there? Exactly. And that's based on Costley's affidavit? Yes. And Costley says Sheriff Baca was not present during the execution of the search warrant, right? That's correct. How do you know that, if he weren't there? Well, Your Honor, I think that... Either he's not competent in that statement or he was there, right? Well, Your Honor, I think that the Court, Your Honor's correct that there may be a competence issue, but I think that there... It doesn't state that he has personal knowledge that he's there, just that he knew that he wasn't involved based on the totality of the search warrant. He didn't say that. He said he wasn't there. Affirmatively. I declare an appellate perjury, which is the next line. He was not present during the execution of the search warrant. Well, again, Your Honor... These facts are within my personal knowledge, except as otherwise expressed. So either Baca, either he doesn't know whether Baca was there or not, or if he's testifying about Baca personally, he was there, right? Well, Your Honor, there's no evidence to indicate that Sheriff Baca was there. So if there's an issue with the... The fact is Acosta was there at least during part of the search, right? Well, we don't know that, Your Honor. There's no evidence in the record to suggest that he was. This was his investigation, so it might not be unreasonable to say that he wasn't there during part of the search. Well, he says he was not present when they first entered the residence, which you would assume means he was present after they entered the residence, during the search, because he only says, I wasn't there when they first entered. He doesn't... That would leave the inference that he was present at other times. Well, Your Honor, I think that that would be a reasonable inference, but again, we're sort of stuck with the fact that the plaintiffs didn't present evidence in opposition to our summary judgment motion. You know, the qualified immunity is a defense. I mean, you're affirmatively representing to us that he wasn't there and asking for qualified immunity on that basis, when it seems from if you take the affidavits provided by the plaintiffs and you read his affidavit carefully, it's likely that he was there. There is no statement here that says he wasn't there affirmatively. He says he wasn't there initially. Deputy Costi or... Deputy Costi. During the execution of the search warrant. Yes. And the same thing is true with the arrest. He says he... And the arrest, yes. He wasn't present when they were stopped. Well... It doesn't say he wasn't present after they were stopped while they were going through the rest of the process. Well, that's true, Your Honor, but I think you can read that statement both ways. I mean, he says he wasn't present at the time... Well, then, in summary judgment, we'd read it in favor of the opposing side. Well, I... You can read it both ways. Your Honor, I don't think that that's – that would be appropriate in this case, because I think we're talking about, number one, the plaintiff was deposed and she was asked specifically if she knew the identity of any... She didn't know, but then later she said she found out. Well, she says – she didn't say she didn't know. She says – we asked her if she knew the identity of any of the people at the scene. She said, asked the officers, no, but she knew one, Lieutenant Basie. And then she turned around. But, you know, I don't think you even have to worry about what the plaintiff said. If you have an affidavit from Costley and you say you can read his affidavit, either as saying he was or wasn't there, and we take on summary judgment the inferences in favor of the nonmoving party, so the inference in favor of the nonmoving party is Costley was there from Costley's own affidavit. Well, again, Your Honor, I think if you look at his affidavit, when he says that he was there, it's unclear as to whether or not he says he was there later. That's right. Unclear. So you take the inference against him, if you can take it either way, because you draw inferences against the moving party. Well, Your Honor, the... He doesn't ever say affirmatively he wasn't there when they were arrested. He doesn't say affirmatively he wasn't there during any part of the search or the arrest, right? Well, I think that the he doesn't say specifically that's true. He doesn't say specifically that he wasn't there at any time during the arrest or the search. I think, but again, the inference from his statement is that he wasn't there. But again, we have to, this is summary judgment, so inferences get drawn the other way. Well, Your Honor, then I think another way is that, and again, we didn't argue this in our brief, but the Court can affirm on any basis supported by the record, but that Deputy Costley would be entitled to qualified immunity even if he showed up afterwards. Yeah, but you didn't argue that in your brief. You said that's not relevant. And, you know, it's true. You can rely on a ground the district court didn't rely on if it's justified by the record. But we don't normally rely on a ground the party doesn't rely on and tells us is irrelevant in the brief. Well, again, Your Honor, we relied on the fact that he wasn't there. Yes.  Otherwise, let's move. Thank you, counsel. On page 6 of the opening brief, it's indicated that the confidential informant was in custody of the Los Angeles County Sheriff's Department serving a 140-day sentence when he purportedly learned his, quote, story, close quote, told the story to Costley and Culver. Unfortunately, and I will fix this, there's no record citation for that statement in the brief. I didn't, it's not in the brief. And I will attempt to repair that when I get back to my office. On page 2 of the reply brief in the first full paragraph of the second sentence, it's indicated, the affidavit nowhere mentioned that the Dean of Kendrick, one of the subjects of the search warrant and a plaintiff in this action, had been a detective. I think that's a significant omission from the affidavit for the warrant, which, if it had been communicated to the magistrate who issued the warrant, might have influenced whether or not the warrant was issued, given the other things in the warrant that didn't have any basis. The next sentence in that brief, the reply brief on page 2, indicates, the affidavit nowhere mentioned that the confidential informant was in jail and had been for some time, and that he was serving a 140-day sentence. The affidavit never explains how the informant learned of the story since he was in police custody. Again, I need to correct that with a record citation, but I do know from my reading of the files that that is accurate. If Costley was at the arrest, he participated in an arrest without probable cause, and not only should he not have gotten qualified immunity, the plaintiff should get judgment in her favor on that issue, because it's a clear constitutional violation. Similarly, if Costley was at the search, as he was, the same conclusion follows from that. I don't, still don't know whether or not there's a Mr. Washington. I do know that the plaintiffs knew somebody named Washington, but I don't know who the Washington is, who was in jail for 140 days, whom we could never find, from whom the Sheriff's Department never put in an affidavit on summary judgment. Last. You didn't depose the defendant? No, I did not. I mean, you could have asked him questions about the informant. That could have been done, and it's a sad fact that it wasn't done. This was not, I don't say this is an excuse for anything, because I'm standing here. I wasn't the attorney in the office handling this case, and that's the way the case was. Mistakes were made, right? Pardon me? Mistakes were made, right? I'm just. No, I just wasn't the person doing it. And one last point. Well, a more significant mistake that was made by me at the beginning of the case was that there was a person named Bassey or Bassey, as in Shirley Bassey, the singer, I guess, who sang one of the Bond theme songs a long time ago. And there were two people in the Sheriff's Department named Bassey. We served one of them and thought we had the right person. That person answered and denied the allegations and complaint. And after the statute of limitations ran, we found out it was a different Bassey and we hadn't tagged the right one. That stuff happens. I think it's important to point out that under Owen v. City of Independence, which is a case this Court well knows from the U.S. Supreme Court in 1980, in no event would Defendant Baca be entitled to qualified immunity being sued in his official capacity. Unless there are any questions, and I doubt there are any, I'll just be done. Thank you, Mr. Enigman. Case just argued will be submitted. Final.
judges: Reinhardt, Kozinski, Thomas